UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| GARY/CHICAGO INTERNATIONAL AIRPORT AUTHORITY, | ) ) ) | |
|     PLAINTIFF & COUNTER-DEFENDANT | ) ) ) ) | |
| vs. | ) ) | |
| ANTHONY ZALESKI, JR., TRUST A-878, AND INDIANA LAND TRUST COMPANY (FORMERLY LAKE COUNTY TRUST COMPANY) AS SUCCESSOR TRUSTEE OF TRUST A-878, | ) ) ) ) ) ) ) | CAUSE NO. 3:15-CV-50-RLM-CAN |
|     DEFENDANTS, COUNTER-PLAINTIFFS, & THIRD-PARTY PLAINTIFFS | ) ) ) ) ) | |
| vs. | ) ) | |
| OXY USA, INC., | ) ) | |
|     THIRD PARTY DEFENDANT | ) | |

## OPINION and ORDER

Third-party defendant OXY USA, Inc. ("OXY") moved to dismiss the third-party complaint brought by defendants/third-party plaintiffs Anthony Zaleski, Jr., Trust A-878, and Indiana Land Trust Company (collectively, "defendants"). (Doc. No. 43). For the reasons that follow, the court grants the motion and dismisses the third-party complaint with prejudice.

I. BACKGROUND

This case began in 2012 when the Gary/Chicago Airport Authority acquired two plots of land from the defendants, one from Trust A-878 and one from Mr. Zaleski. The Airport Authority brought this suit against the defendants in January 2015, alleging that the land it acquired from them is contaminated and seeking damages and declaratory relief under various state and federal statutes.

In response, the defendants filed the third-party complaint at issue here. The defendants allege that the Trust acquired the land in question in 1976, and that before 1976 the land was owned by OXY's predecessor, Cities Service Oil Company. Between acquiring the land in 1976 and transferring it to the Airport Authority in 2012, the defendants didn't cause or contribute to the discharge of oil or other contaminants on the land. Rather, throughout this period OXY's predecessors owned and operated oil and gas pipeline easements across the property in question. Accordingly, the defendants insist that any contamination – whether arising before or after they acquired the land from Cities Service – was caused by OXY and its predecessors and so is OXY's responsibility. The third-party complaint seeks contribution from OXY for any liability the defendants owe to the Airport Authority, as well as declaratory judgment to the same effect.

## II. STANDARD OF REVIEW

OXY moves to dismiss the third-party complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To state a claim, a complaint need only contain a short and plain statement showing that the plaintiff is entitled to relief. *See* EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007). When deciding a Rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the non-moving party's favor. *See* Hecker v. Deere & Co., 556 F.3d 575, 580 (7th Cir. 2009).

A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains sufficient factual allegations to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Adams v. City of Indianapolis, 742 F.3d 720, 728 (7th Cir. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the…claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (ellipsis in original).

III. Discussion

OXY's motion is based on a document attached to the motion, which OXY claims is the written agreement by which Cities Service sold the property.

OXY argues that the assumption of liabilities in this agreement precludes the defendants from seeking contribution from OXY for environmental contamination.

Before reaching the merits, the court must resolve two disputes about what material may be considered in ruling on OXY's motion to dismiss. At the motion to dismiss stage, a court typically considers only the facts alleged in the complaint or contained in exhibits attached to the complaint. *See* Forrest v. Universal Savings Bank, F.A., 507 F.3d 540, 542 (7th Cir. 2007). OXY urges the court to consider facts offered in two documents that aren't part of the third-party complaint at issue: the Airport Authority's original complaint against the defendants, and a purported copy of the 1975 agreement through which Cities Services transferred the land at issue.

A. The Airport Authority's Original Complaint

A court ruling on a motion to dismiss may consider documents not part of the complaint "if they are referred to in the plaintiff's complaint and are central to his claim." Wright v. Assoc. Ins. Cos., Inc., 29 F.3d 1244, 1248 (7th Cir. 1994). OXY urges the court to accept as true not only the facts alleged in the defendants' third-party complaint, but also the facts the Airport Authority alleged in its initial complaint against the defendants. OXY argues that the "Airport's allegations are the basis of and incorporated into the 3rd party complaint," so the entirety of the Airport Authority's complaint must be

accepted as true for purposes of this motion to dismiss. OXY relies on the Airport Authority's allegations in support of several arguments in the motion to dismiss.

To assume the truth of all the Airport Authority's allegations in evaluating the legal sufficiency of the third-party complaint would make little sense. Unlike in the typical incorporation-by-reference situation in which a plaintiff relies on the truth and validity of an external document to support its claims, the third-party complaint here neither admits nor depends on the truth of the Airport Authority's claims; it simply asserts that *if* the defendants are held liable to the Airport Authority, OXY should be liable for contribution. The third-party complaint avoids admitting many of the key allegations of the Airport Authority's complaint. (*See, e.g.*, Third-Party Complaint, Doc. No. 41 at ¶ 8) (referring to "the *alleged* events giving rise to the Airport Authority's claims") (emphasis added).

More significantly, in its answer to the Airport Authority's complaint, the defendants explicitly deny many of the same facts that OXY seeks to deem admitted. For example, OXY makes arguments related to Mr. Zaleski's alleged status as a general partner in a partnership called Lake Material Service. Yet while the Airport Authority's complaint alleged that Mr. Zaleski was a member of that partnership, the defendants' answer denies that allegation. (*See* Answer, Doc. No. 8 at ¶ 16).

Under OXY's understanding of the incorporation by reference doctrine, any defendant who files a third-party complaint would necessarily be deemed to admit all the allegations of the original complaint – a result that would force defendants to either defend themselves from the underlying claims or seek contribution, but never both. The authority OXY cites in support of such a dramatic proposition falls well short of proving the point. The case OXY primarily relies on, Williamson v. Curran, 714 F.3d 432 (7th Cir. 2013), simply explains that written instruments attached to a complaint are typically considered part of the complaint – but this third-party complaint doesn't attach the original Airport Authority complaint. Moreover, Williamson made clear that even attachments to a complaint should only be assumed true for purposes of a motion to dismiss if the author of the complaint relies on their contents. *See* 714 F.3d at 436 ("What makes it appropriate for us to consider the documents that Williamson has attached to her complaint is that she has not only cited them in the body of her complaint, but she has, to some degree, relied on their contents as support for her claims."). These defendants not only don't rely on the truth of the Airport Authority's allegations, they explicitly deny many of them.

The only other authority OXY offers in support of its argument are two out-of-circuit district court cases which recited without elaboration that they would consider the allegations in both the underlying complaint and the third-party complaint when ruling on a motion to dismiss the latter. *See* Erie Ins.

Exch. v. Danby Products, Inc., No. CIV.A. 10-1271, 2011 WL 2470608, at *2 n. 1 (W.D. Pa. June 21, 2011); Railey v. S. Ry. Co., 31 F.R.D. 519, 522 (E.D.S.C. 1963). Neither case provides any authority for (or even discussion of) this practice, and neither makes clear whether the third-party plaintiff denied the relevant allegations of the original complaint in its answer. In any event, neither case binds – nor is either opinion persuasive to – this court. Williamson is binding, and its reasoning compels a conclusion that the Airport Authority's allegations shouldn't be presumed true, because the defendants didn't rely on the truth of these allegations in support of their third-party claims.

B. The Written Agreement

OXY's motion to dismiss attaches as an exhibit a document that purports to be a June 27, 1975 agreement between Cities Service and Lake Material Service. The agreement relates that Cities Service agreed to sell a certain parcel of land to Lake Material "conditioned on certain agreements and covenants" that the agreement sets forth. In essence, the agreement provides that Lake Material would pay $10, and in exchange Cities Services would transfer the land to Hoosier State Bank as trustee for the Trust (of which Lake Material is listed as beneficiary). The agreement states that Lake Material will "assume and be responsible for any and all obligations, liabilities, losses or damages that may arise out of the interest and title" of the property, and that Lake Material will "assume and be responsible for any and all obligations,

liabilities, losses or damages that may arise" out of the interest and title in the property or all operations on the property. (Agreement, Doc. No. 44-1 at 2). The agreement mentions environmental issues specifically, stating that Lake Material also assumes "any and all problems concerning environmental pollution agencies" and will be responsible for satisfying the Indiana environmental regulatory agency.

OXY says that this agreement represents the land sale contract transferring the land in question from OXY's predecessor to the Trust, so the entire third-party complaint relies on the agreement. OXY therefore urges the court to consider the agreement as incorporated by reference in the third-party complaint. The defendants respond that documents outside the pleadings can only defeat contrary allegations of a complaint in the context of breach of contract actions, and that OXY's attachment of the agreement to its motion to dismiss converts the motion into one for summary judgment. There is no merit to either argument. "It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss … if they are referred to in the plaintiff's complaint and are central to his claim.'" Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012) (quoting Wright v. Assoc. Ins. Cos. Inc., 29 F.3d 1244, 1248 (7th Cir. 1994)). Courts can – and routinely do – consider documents other than the complaint when considering motions to dismiss a wide variety of actions, not only breach of contract suits. *See, e.g.*, Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002)

(considering a letter incorporated to the complaint in a § 1983 action). Moreover, our court of appeals has made very clear that "if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." Brownmark Films v. Comedy Partners, 682 F.3d at 690.

The agreement (if relevant to the parties and land at issue here)[1] is referred to by, and central to, the defendants' third-party claims. Had OXY's predecessor not been the original owner and subsequently sold the land to the Trust, the defendants could hardly blame the pollution problems on OXY now. The defendants' third-party claims against OXY exist only by virtue of OXY's status as the prior owner, so the document transferring the land from OXY's predecessor to the defendants' affiliate is inextricably bound up in the contribution claim. While the third-party complaint doesn't refer to the document itself, it mentions and relies heavily on the underlying land transfer that the agreement memorializes. (*See* Third-Party Complaint, Doc. No. 41 at ¶ 10-11) (relating that "[b]efore 1976, Cities Service Oil Company… owned all 153 acres of the Original Property" and that "[i]n 1976, the Trust acquired 153 acres of land"). The defendants can't premise their entire claim for contribution on this land transfer, yet escape the terms of the transfer contract simply

---

[1] The defendants' chief arguments for why the terms of the agreement do not bar their contribution claims are that they were not a party to it and that it is unclear whether it refers to the same plot of land as the third-party complaint. The court considers these arguments below.

because the contract itself wasn't attached to their complaint. This is precisely the sort of situation for which incorporation by reference was designed. *See* Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002) (noting that the doctrine of incorporation by reference stops a plaintiff from being able to "evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved his claim has no merit."). The court will consider the terms of the agreement in ruling on the motion to dismiss, and won't convert the motion into one for summary judgment.

C. Merits

If the agreement applies in this case, its terms bar the defendants' claims. The agreement unambiguously establishes that the buyer (Lake Material) assumed responsibility for both then-existing and future environmental problems, including all "obligations, liabilities, losses or damages" associated with ownership or operation of the property. To the extent that the agreement binds the defendants, its terms defeat their claim for contribution against OXY because OXY's predecessor transferred the land only on the explicit condition that risk of environmental liability would transfer completely to the buyer.

The defendants don't argue to the contrary. Rather, they insist that the agreement doesn't defeat their contribution claims because the agreement doesn't bind them, because (1) none of them were parties to the agreement,

-10-

and (2) it is impossible to tell without parol evidence whether the land referred to in the agreement is the land at issue in this case.

*The agreement binds the defendants*

In their response brief, the defendants insist that the agreement can't defeat their claims because none of them was a party to it nor in privity of contract with a party.[2] The agreement is between Lake Material Service (not a defendant in this case) and Cities Service. Therefore, the defendants argue, any assumption of liabilities by Lake Material isn't binding on them. They argue that the agreement is an indemnity contract, and that under Indiana law an indemnity claim can only be enforced by parties to an agreement or those in privity with them. *See* Coca-Cola Bottling Co.-Goshen, Ind. v. Vendo Co., 455 N.E.2d 370, 375 (Ind. Ct. App. 1983) (affirming summary judgment where lessor of property damaged by fire brought third-party indemnity claims against the manufacturer of a piece of machinery that allegedly caused the fire, because "privity was necessary to the claim and was lacking.").

The agreement is not simply an indemnity contract. An indemnity contract obligates one party to reimburse another for costs associated with a

---

[2] OXY insists that Mr. Zaleski was in effect a party to the contract, because he was a partner in the Lake Material partnership and so is personally bound by any agreements made by the partnership in the course of its business. As noted above, however, the third-party complaint doesn't refer to any association between Lake Material and Mr. Zaleski, and the allegations to that effect in the Airport Authority's complaint were denied in defendants' answer. At this stage, therefore, the court can't assume the truth of OXY's statement that Mr. Zaleski was a partner of Lake Material.

particular liability. *See* Henthorne v. Legacy Healthcare, 764 N.E.2d 751, 756 (Ind. Ct. App. 2002) (explaining that "an indemnity agreement involves a promise by one party (indemnitor) to reimburse another party (the indemnitee) for the indemnitee's loss, damage, or liability"). This agreement did more than just provide for reimbursement; it expressly transferred the underlying liabilities themselves, rather than only obligating Lake Material to pay any damages assessed against Cities Service.

Regardless, whether the agreement is construed as an indemnity contract is irrelevant; privity is generally required before any type of contract can be enforced against a party in Indiana. But privity of contract is only one of the ways in which parties can be bound by the terms of an agreement. Indiana has long recognized that the obligations of a contract may also extend to those who stand in privity of estate with the parties to the contract. *See* Evansville & S.I. Traction Co. v. Evansville Belt Ry. Co., 44 Ind. App. 155, 162, 87 N.E. 21, 23 (1909); *see also* Columbia Club, Inc. v. American Fletcher Realty Corp., 720 N.E.2d 411, 417 (Ind. Ct. App. 1999) (noting that privity of estate is "an exception to the privity of contract requirement").

The defendants here are unquestionably[3] in privity of estate with the original covenanting party, Lake Material. Vertical privity is "the most easily satisfied form of privity of estate," and is established when "the party seeking to

---

[3] Again, this assumes that the land at issue in the agreement is the same land involved in the third-party complaint – a proposition that is discussed below.

enforce the covenant and the party against whom it is to be enforced are successors in title to the property of the covenantee and covenantor respectively." Columbia Club v. American Fletcher, 720 N.E.2d at 421-422. Additionally, horizontal privity must generally be proven by showing that the covenant in question was made in the context of the transfer of an interest in the relevant land. *See* Moseley v. Bishop, 470 N.E.2d 773, 777 (Ind. Ct. App. 1984). Both requirements are easily met here. The agreement makes clear that Lake Material purchased the land in question as nominee for the Trust, and the third-party complaint states that the Trust subsequently conveyed portions of the land to Mr. Zaleski. The third-party complaint also alleges that OXY became the successor of Cities Service "with respect to the easements and pipelines on the property." (Third-Party Complaint, Doc. No. 41 at ¶ 20). Mr. Zaleski and the Trust are, accordingly, subsequent grantees of the land and stand in vertical privity of estate with Lake Material, while OXY stands in vertical privity with Cities Service. Horizontal privity is also established, because the agreement recites that it memorializes a land transfer "conditioned on certain agreements and covenants" including the assumption of liability at issue here.

That privity of estate exists between defendants and OXY due to their status as subsequent grantees of the covenanting parties doesn't necessarily mean that defendants can be bound by the assumption of liabilities covenant in the agreement. In Indiana, only covenants in a contract that "run with the

land" impose an affirmative duty on subsequent grantees as well as the original covenantor. *See* Columbia Club, 720 N.E.2d at 418 (Ind. Ct. App. 1999); Evansville & S.I. Traction Co. v. Evansville Belt Ry. Co., 87 N.E. 21, 23 (1909) ("Privity of estate that can render parties liable upon contracts not of their own making relate solely to covenants that run with land, or some interest therein."). A covenant that imposes affirmative duties will run with the land if: "(1) the covenantor and covenantee intend it to run; (2) the covenant touches and concerns the land; and (3) there is privity of estate between subsequent grantees of the covenantor and covenantee." Williams v. Indiana Rail Rd. Co., 33 N.E.3d 1043, 1053 (Ind. Ct. App. 2015) (quoting Columbia Club v. American Fletcher, 720 N.E.2d at 418). As already discussed, the parties are in privity of estate. There is little dispute that the assumption of liabilities touches and concerns the land; the agreement expressly conditions transfer of the land on the assumption covenant, and the liabilities assumed are those "arising from the property" and from "all operations on said property." The dispositive question is whether the parties intended the assumption of liability to run with the land.

The covenanting parties' intent must be determined "from the specific language used and from the situation of the parties when the covenant was made." and "a statement in the covenant that it is binding on the covenantor's heirs and assigns is strong evidence of intent that the covenant should run with the land." Williams v. Indiana Rail, 33 N.E.3d at 1053-1054. With regard

to the specific language used, the original parties to the agreement explicitly stated that the assumption of liability covered not only existing environmental problems but also problems "which may arise subsequent to the date of transfer." This language indicates that the parties intended the transfer of liabilities to be permanent and ongoing, and that Cities Service intended to wash its hands entirely of any pollution problems on the land. Such an intent would be frustrated if Lake Material could simply resell the property and future owners could sue Cities Service for preexisting contamination. True, in such a situation Cities Service might sue Lake Material to recover any damages assessed against it. But that would transform the agreement into nothing more than an indemnity contract; as discussed above, the agreement reflects an intent to transfer the liabilities entirely rather than simply giving Cities Service a future entitlement to reimbursement.

The parties' situation at the time the covenant was made also indicates that the assumption of liability was meant to bind future grantees. As reflected in the language of the agreement itself, Lake Material was purchasing the property solely as nominee of the Trust. Cities Service therefore knew that the property would be immediately transferred to another entity. And given the low purchase price ($10), Cities Service almost certainly believed there to be a serious risk of future liability associated with environmental contamination on the land; the real consideration for the transfer of the property appears not to have been the nominal purchase price, but rather the freedom from future

liability that would result from the assumption covenant. It is improbable that the parties intended the assumption of liability to apply only to the land's temporary owner, Lake Material, rather than the future owners who would inevitably have to grapple with any environmental liabilities. *See* Columbia Club, Inc. v. Am. Fletcher Realty Corp., 720 N.E.2d 411, 420 (Ind. Ct. App. 1999) (inferring intent for the indemnification provision of a contract to bind future grantees, because the parties knew it was highly probable that damages would be incurred after the ownership of the property was transferred to a third party).

Accordingly, the assumption of liabilities in the agreement binds the defendants because they stand in privity of estate with the covenanting parties and the assumption covenant runs with the land.

*The agreement and third-party complaint refer to the same land*

The defendants' final argument is that the agreement doesn't give a legal description of the land. Therefore, they insist, "it is indeterminable whether [the agreement] applies to the same property" that is described in the third-party complaint. The true identity of the land referenced in the agreement can only be determined by parol evidence, and dismissal prior to discovery is premature.

The third-party complaint describes the "original property" as a plot of land in Lake County, Indiana that is "[p]art of the Northwest quarter of Section 35, Township 37 North, Range 9 West of the 2nd Principal Meridian" that was

acquired by the Trust from Cities Service in 1976.[4] (3rd P comp ¶ 10-11). The agreement says the same thing in different words, describing the property at issue as "certain land owned by Cities Service Oil Company located in the NW/4 of Section 35, Township 37 North, Range 9 West, Lake County, Indiana." The defendants don't actually claim that the agreement relates to some other plot of land which the Trust acquired via Cities Service in the same range of the same section of the same quarter of the same township in the same county. They merely insist that because the third-party complaint goes on to recite the foot-by-foot legal description of the land's precise boundaries yet comparable detail does not exist in the agreement, there is no proof that the two documents describe the same plot. The terms of the agreement and the third-party complaint adequately establish that they refer to the same property.

IV. CONCLUSION

The agreement applies, and its assumption of liabilities clause binds the defendants. Any claim for contribution that the defendants might otherwise

---

[4] The defendants make much of the fact that the third-party complaint alleges the land was acquired by the Trust in 1976, while the agreement is dated June 1975. This purported inconsistency is illusory; as noted earlier, Lake Material bought the land as a nominee, with the clear purpose of transferring it to the Trust thereafter. It is entirely plausible that Lake Material's deal with Cities Service occurred in 1975 (as memorialized in the agreement), yet the formal transfer from Lake Material to the Trust didn't occur until 1976. If anything, the close proximity in dates supports rather than undermines a conclusion that the properties referred to in the agreement and the third-party complaint are the same.

have against OXY is barred by the express assumption of liabilities in the agreement, and the third-party complaint must be dismissed in its entirety.

Third-party defendant OXY USA's motion to dismiss the third-party complaint (Doc. No. 43) is GRANTED. The amended third-party complaint (Doc. No. 41) is DISMISSED with prejudice.

SO ORDERED.

ENTERED:  November 17, 2015


                /s/ Robert L. Miller, Jr.
                Judge
                United States District Court